No. 15,421.

L<small>IDDLE</small> <small>ET</small> <small>AL.</small> *v.* L<small>ECHMAN</small> <small>ET</small> <small>AL.</small>
(163 P. [2d] 802)

Decided November 5, 1945.

Mr. T. E. M<small>UNSON</small>, for plaintiffs in error.

Messrs. R<small>OLFSON</small> & H<small>ENDRICKS</small>, for defendants in error.

*En Banc.*

MR. JUSTICE ALTER delivered the opinion of the court.

T. R. LIDDLE and John R. Liddle, plaintiffs in' error here, were plaintiffs in the district court, and John Lechman, Ray Johnson and Stanley Anderson, defendants in error, were defendants. We will refer to the parties as they there appeared, or by name.

T. R. Liddle passed away prior to the trial in the district court, notwithstanding which he is improperly continued as a party litigant by plaintiffs' attorney. It was stipulated by counsel that T. R. Liddle's interest in the subject matter of the litigation became vested in John R. Liddle.

The evidence disclosed that Stanley Anderson was a tenant and not otherwise interested in the litigation, and as to him the action was dismissed.

The action in the trial court was determined upon the assumption that John R. Liddle was the sole plaintiff, and John Lechman and Ray R. Johnson were the only defendants.

In the plaintiffs' complaint it is alleged that they are the owners of approximately seven hundred and twenty-five acres of land in Sedgwick county, Colorado, together with nine cubic feet of water per second of time taken from the South Platte river and decreed in 1890 to the Liddle ditch. It is further alleged that the defendants have confederated and conspired to deprive plaintiffs of the use of this nine cubic feet of water, have opened the headgates in the Liddle ditch and appropriated this water to their own use, and will continue so to do unless enjoined. Plaintiffs pray injunctive relief.

Defendants in their answer admit plaintiffs' ownership of the land described in their complaint but deny that plaintiffs are entitled to the exclusive use of the nine cubic feet of water, the ownership of which they claim. They also allege facts from which it may be definitely stated that the Liddle ditch is entitled, by reason

of decreed priorities in 1890 and 1891, to nineteen cubic feet of water per second of time from the South Platte river, the earlier decree designated as 18 A, for nine cubic feet of water per second of time (originally decreed to the Russell and Sidebottom ditch), and the later decree designated as 18 B, for ten cubic feet of water per second of time. And, further, that when these decreed priorities were entered, they were then, and subsequently, used by T. R. Liddle for the irrigation of lands of approximately fifteen hundred acres owned by him. Subsequently, and in 1916, T. R. Liddle conveyed these lands and the nineteen cubic feet of water decreed to the Liddle ditch to the Liddle Farm Company, which, on January 1, 1927, conveyed all thereof to Bertha M. Cox. Bertha M. Cox subsequently conveyed part of the lands then owned by her, together with water rights, to plaintiffs, and defendants acquired title to parts of the land and water rights through mesne conveyances.

Upon application, a temporary injunction was issued, restraining defendants from using any part of the nine cubic feet of water per second of time designated as 18 A, but upon trial the temporary injunction was dissolved and judgment entered in favor of defendants.

The judgment and decree provided, inter alia, that the nineteen cubic feet of water per second of time decreed to the Liddle ditch under decrees designated as 18 A and 18 B should be apportioned among plaintiffs and defendants as follows:

"That the plaintiff owns nine (9) cubic feet of water in the Liddle Ditch, the same being 9/19 of the nine cubic feet known and referred to as Priority No. 18 A and 9/19 of 10 cubic feet of water flowing in the Liddle Ditch known as Priority No. 18 B.

"That the defendant Lechman owns five (5) cubic feet of water in the Liddle Ditch to be used for irrigation without regard to priorities of 18 A and 18 B flowing in the said ditch.

"That Ray R. Johnson is the owner of one and one-half (1½) cubic feet of water per second of time in the Liddle Ditch and is entitled to use the said water for the irrigation of his land hereinbefore described without regard to priorities as among the several owners and water users in the said Liddle Ditch."

The specification of points upon which plaintiffs rely for a reversal of the judgment are: "1. The decreed priority of water carried by the Liddle Ditch comprises nineteen (19) cubic feet, all of which is held by the plaintiffs and defendants. The Court gave 9 cubic feet to the plaintiffs in error and 6½ cubic feet to the defendants in error. This leaves 3½ cubic feet of water undisposed of, so far as the decree is concerned, and the judgment and decree is, therefore, ambiguous and unintelligible, and does not determine in whom the said additional 3½ cubic feet is reposed. 2. The Lower Court granted to plaintiffs in error only 9 cubic feet of water in the Liddle Ditch of Priority 18-A and Priority 18-B combined. Such allowance is contrary to the deeds of conveyance conveying said property to the plaintiffs, and is contrary to the evidence in the case. 3. We contend the allowance of 6½ cubic feet to the defendants is contrary to the deed of conveyance offered in evidence and has no support in the evidence and constituted a violation of plaintiffs' rights. 4. The Court held that this water of Priority 18-A and Priority 18-B must be used by the plaintiffs and defendants interchangeably, neither having a priority right over the other. This, we contend, is contrary to the decree of priority, and is contrary to the law governing such matters, and constitutes prejudicial error against the plaintiffs in error. 5. The Court erred in overruling plaintiffs' motion for new trial."

From the record the evidence may be thus summarized:

T. R. Liddle and John R. Liddle were father and son, and the father, in 1916 and for some years prior thereto,

was the owner of a ranch in Sedgwick county consisting of approximately fifteen hundred acres together with decreed water priorities 18 A and 18 B amounting in the aggregate to nineteen cubic feet of water per second of time. This irrigation water was decreed for use on the Liddle ranch and had been so used for many years prior to 1916 and subsequent thereto. In 1916 T. R. Liddle deeded his land, and his water rights evidenced by priorities 18 A and 18 B, to the Liddle Farm Company, a family owned corporation. On January 1, 1927, the corporation conveyed all of its lands, together with its decreed priorities 18 A and 18 B to Bertha M. Cox who, on the same day, procured a loan from the Farm Loan Company which she evidenced by five promissory notes secured by five separate deeds of trust on five separate tracts of land and water rights so purchased by her from the Liddle Farm Company. Subsequently the New York Life Insurance Company became the owner and holder of all the notes and deeds of trust. On December 2, 1928, Bertha M. Cox conveyed by warranty deed to James M. Andersen three hundred and eight acres of the land so purchased by her from the Liddle Land Company subject to encumbrances of record, and by mesne conveyances defendant Lechman became and is the owner thereof. In the warranty deed from Bertha M. Cox to James M. Andersen, after a legal description of the land, we find the following description of the water conveyed in conjunction therewith: "Together with all water, water rights, ditches and ditch rights pertaining or in any wise belonging to said land and *especially an undivided 5/19 interest in and to the Liddle Ditch and Russell and Sidebottom Ditch and all water rights appertaining thereto, being five cubic feet per second of their decreed priorities #18 B and #18 A.*" (Italics ours)

There is also in the record a warranty deed dated August 3, 1937, from Sherman R. Cox, trustee for Jean C. Cox and William S. Cox, et al., conveying to Lech-

194

man the lands which he now owns, subject to encumbrances which he assumed and agreed to pay, and therein the water conveyed is described as follows: "Together with 5.0 cubic feet of water per second of time under priorities 18 A and 18 B, and an undivided interest in and to the ditch through which said water is conveyed."

How, and under what circumstances, Sherman R. Cox, trustee for others, became interested in the title to this property after the conveyance of December 2, 1928, to James M. Andersen is not disclosed, and if this conveyance became necessary because of foreclosure proceedings by the New York Life Insurance Company on the note and deed of trust held by it, that fact is not made apparent. We do find from the record that this land so deeded by Bertha M. Cox to James M. Andersen on December 2, 1928, was encumbered at the time of the conveyance, and the record discloses that on December 17, 1927, Andersen procured a loan from the Federal Land Bank of Wichita in the amount of $12,500.00, at which time he covenanted and agreed with that bank that the property was free and clear of all encumbrances, and in the deed of trust it appears also that the loan was to be used for the purposes set forth in the application. It will be presumed that the loan thus procured from the Federal Land Bank was used for the purpose of discharging the lien of the deed of trust to the Farm Loan Company, subsequently assigned to the New York Life Insurance Company.

Ray R. Johnson became the owner of a tract of the Cox land consisting of ninety-eight acres. The conveyance of this tract was probably in 1937, and, according to the court's findings—although not entirely clear from the record—Ray R. Johnson received his title to this land through mesne conveyances prior to March 14, 1932, from Bertha M. Cox. In the court's findings, the water rights conveyed with the Johnson land were described as: " * * * and all appurtenances thereto, in-

cluding the right to take and use for agricultural purposes on said lands water as needed flowing through the said Liddle Ditch to the extent of one and one-half (1½) cubic feet of water per second of time, without priority as among the several owners of the right to use said 19 cubic feet of water per second of time."

Where this description of these water rights was obtained is not clear from the record for, according to the stipulation of counsel, the water rights owned by Johnson were acquired through foreclosure of the Cox deed of trust assigned to the New York Life Insurance Company and public trustee deed issued thereon. In the deed of trust the water rights were described as follows: "Also all water, water rights, ditches, ditch rights, reservoirs and reservoir rights, pumping plants and rights of way for water, ditches and reservoirs, and all enlargements and· extensions thereof pertaining or in any way belonging to said land or used thereon, or which are held, owned, or controlled, or which may be hereafter acquired by the said party of the first part and his heirs, personal representatives, and grantees for use thereon or in connection therewith, and especially an undivided fifteen hundredths (15/100) interest in and to the Liddle Ditch and all water rights appertaining thereto, being one and one-half (1½) cubic feet per second of its decreed priority known as No. 18 B, as of date October 21, 1891; * * * "

On March 14, 1932, Bertha M. Cox entered into a written contract with John R. Liddle and Myrtle C. Liddle for the sale and purchase of approximately seven hundred and twenty-five acres of land and water rights in connection therewith, being a part of the property which she had theretofore acquired from the Liddle Farm Company. In this contract the water rights which were contracted to be conveyed with the land were thus described: "Also nine (9) cubic feet of water per second of time to irrigate said lands from the ditch known as the Liddle Ditch, in accordance with the priorities de-

cree to the Russell and Sidebotham and the Liddle priorities, the said lands not to have any priorities over other lands watered by said ditch."

In this same contract we find another provision with reference to the use of the water rights so contracted to be sold and purchased: "It is further agreed that the nine (9) cubic feet of water, the right to use of which is hereby contracted to be conveyed by the first party, constitutes a portion of the decreed priority of nineteen (19) cubic feet of water under the Russell and Sidebotham and the Liddle Ditch priorities, the right to the use of which is to be shared by the owners of other lands which are subject to irrigation by said water, without priorities among such owners; * * * "

In this same contract Liddle and his wife further assumed and agreed to pay the note then owned by the New York Life Insurance Company which was secured by deed of trust on the land and water rights contracted to be purchased by the Liddles, and in the public trustee's deed, which we assume followed the description in the deed of trust, those water rights were thus described: "Also all water, water rights, ditches, ditch rights, Reservoirs and reservoir rights, pumping plants, and rights of way for water, ditches and reservoirs, and all enlargements and extensions thereof, pertaining or in any way belonging to said land or used thereon or which are held, owned or controlled by the said Bertha M. Cox and Sherman R. Cox, and their heirs, personal representatives and grantees for use thereon or in connection therewith, and especially, * * * an undivided one-tenth (1/10) interest in and to the Liddle Ditch and all water rights appertaining thereto being One (1) cubic foot per second of its decreed priority known as No. 18-B as of date October 21, 1891, and also an undivided Three-Fourths (¾) interest in and to the water rights decreed to the Russell and Sidebottom Ditch, through the Liddle Ditch, under priority known as No. 18-A as of date of October 22, 1890, which said undi-

vided Three-Fourths (¾) interest consists of Nine (9) cubic feet per second and is used and diverted through the Liddle Ditch."

The Liddles suffered some default in the provisions of the deed of trust then owned by the New York Life Insurance Company, and the New York Life Insurance Company was about to foreclose. To prevent this foreclosure, the Liddles sought a loan from the Federal Land Bank of Wichita, but at first were unsuccessful in procuring it. Thereafter and on August 12, 1934, the encumbered premises, together with the water rights, were sold by the public trustee, and a certificate of purchase issued to the New York Life Insurance Company. Subsequent to the issuance of the certificate of purchase and as a result of the efforts of T. R. Liddle and John R. Liddle, their application to the Federal Land Bank for a loan sufficient in amount to discharge the New York Life Insurance Company obligation was reconsidered and approved. By direction of the Federal Land Bank to its representative, the amount due upon the certificate of purchase then held by the New York Life Insurance Company was paid, and the certificate assigned to John and T. R. Liddle in January, 1935. Prior to the assignment of the certificate, and on December 27, 1934, for reasons and purposes not clearly disclosed by the record, Bertha M. Cox executed her warranty deed to the lands and water rights described in her purchase contract with the Liddles, and in said warranty deed the water rights were thus described: "Together with an undivided 9/19 interest in the Liddle .Ditch, and an undivided 9/19 interest in the 9 cubic feet of water per second of time and the 10 cubic feet of water per second of time allowed to flow therein, under Priority No. 18 A and No. 18 B, respectively * * * with all its appurtenances and warrant the title to the same except encumbrance of record and taxes, and we do hereby covenant to warrant and defend the title to said premises only against the lawful claims of all persons holding by,

through or under the grantors, except taxes and encumbrances of record at the time of foreclosure of Deed of Trust."

This warranty deed from Bertha M. Cox to the Liddles for the lands and water rights described in the purchase contract was recorded in the office of the county clerk and recorder of Sedgwick county on January 3, 1935, *prior to the time* that plaintiffs had actually completed their loan transaction with the Federal Land Bank and secured an assignment of the certificate of purchase then held by the New York Life Insurance Company, so that at the time of the assignment plaintiffs actually had title.

Plaintiffs evidenced their indebtedness to the Federal Land Bank by a note secured by an amortization mortgage upon the identical lands and water rights which they had purchased from Bertha M. Cox and for which she had executed the warranty deed hereinbefore mentioned. In this mortgage the water rights were thus described: "Together with undivided 9/19 interest in the Liddle Ditch, and an undivided 9/19 interest in the 9 cubic feet of water per second of time and the 10 cubic feet of water per second of time allowed to flow therein, under priority No. 18 A and No. 18 B, respectively; * * * "

The record discloses that B. A. Anderson is the owner of lands formerly belonging to Bertha M. Cox, comprising one hundred and sixty acres, and inferentially that he is interested in irrigation water from the Liddle ditch. However he is not made a party to this action. The public trustee issued his deed to plaintiffs on February 23, 1935, and in describing the water rights we assume that he used the exact description thereof contained in the deed of trust although this does not appear in the record. The plaintiffs must base their claim to the first nine cubic feet of water per second of time from the Liddle ditch, and designated as priority 18 A, upon this trustee's deed for otherwise under their war-

ranty deed from Bertha M. Cox the irrigation water in the Liddle ditch is so described as to give plaintiffs no advantage over other users in that ditch.

There is evidence in the record that prior to 1940 the irrigation water decreed under priorities 18 A and 18 B was used by the owners of lands under the Liddle ditch interchangeably and cumulatively and without reference to priority, and that this use of the irrigation waters decreed provided sufficient water for the irrigation of all lands under the Liddle ditch even when the water in the South Platte river was insufficient to fully satisfy both priorities. There is evidence to the effect that even when the water in the South Platte river was insufficient to fully satisfy priority 18 A, there was sufficient water to irrigate the lands under the Liddle ditch if the same was judiciously and economically used.

1. Under the pleadings, plaintiffs claimed the absolute right to the first nine cubic feet of water per second of time decreed as priority 18 A to the Liddle ditch. In order to establish this right, they must rely entirely upon rights derived through the public trustee's deed of February 23, 1935, and this is the position taken by them in the trial court. The defendants sought no adjudication of their rights, but interpreting their pleading in the light of the prayer of their answer, they were resisting plaintiffs' right to the exclusive use of the first nine cubic feet of water per second of time and asking the dismissal of plaintiffs' complaint. The sole question presented by the pleadings for the trial court's determination was plaintiffs' claimed rights in the Liddle ditch. That was the only controverted question and the only issue that the court was called upon to determine. It is true that in the court's findings and decree it determined not only plaintiffs' rights to the irrigation water decreed to the Liddle ditch but went further and determined the rights of the two remaining defendants. Plaintiffs complain that in the court's findings and decree it determined the right of the various parties to

only fifteen and a half cubic feet of the nineteen cubic feet per second of time decreed to the Liddle ditch, apportioning the fifteen and a half cubic feet among the parties as nine nine-tenths of nineteen cubic feet of priorities 18 A and 18 B to plaintiffs, five-nineteenths of priorities 18 A and 18 B to defendant Lechman, and one and one-half nineteenths to defendant Johnson. Plaintiffs assert ownership in the remaining three and one-half nineteenths of priorities 18 A and 18 B, but a search of the record discloses no evidence supporting this claim. For aught that appears in the record we must conclude that the remaining three and one-half cubic feet of water per second of time decreed to the Liddle ditch under priorities 18 A and 18 B belong to parties other than the litigants here, and as to those parties the court had no jurisdiction. The parties to this litigation collectively claimed ownership of fifteen and one-half cubic feet of water per second of time in irrigation waters decreed to the Liddle ditch, their rights were determined by the trial court, and its failure to make a complete determination of the ownership of all irrigation waters decreed to the Liddle ditch is a matter of no concern to plaintiffs. If plaintiffs were interested in a complete determination as to the nineteen cubic feet decreed to the Liddle ditch under priorities 18 A and 18 B, it was incumbent upon them to bring the proper parties before the court and by proper allegations make the complete adjudication a matter of issue. Without objection the court proceeded to determine defendants' rights to water in the Liddle ditch, and its failure to determine either the ownership or the right to the use of the remaining three and one-half cubic feet of water per second of time decreed to the Liddle ditch not only was proper, but had it attempted to adjudicate this matter, its decree in that respect would have been wholly void for lack of jurisdiction.

2. By the express terms of the contract of March 14, 1932, plaintiffs had assumed and agreed to pay not

only the encumbrances against the lands and water rights described in the contract but other indebtedness. Had plaintiffs complied with the terms of their contract with Bertha M. Cox and faithfully discharged the obligations which they assumed and agreed to pay, there could have been no foreclosure on August 12, 1934, for then the terms and conditions of the deed of trust securing the note held by the New York Life Insurance Company would have been fulfilled.

The record discloses that prior to August 12, 1934, the date of the foreclosure of the deed of trust held by the New York Life Insurance Company on the lands described in the purchase contract of March 14, 1932, plaintiffs had applied to the Federal Land Bank for a loan for the specific purpose of paying the note and thereby releasing the lands to be purchased by them from the lien of the deed of trust, and had they been successful in then securing the loan, the lien of the deed of trust which they had assumed and agreed to pay would have been fully satisfied and extinguished. It was plaintiffs' failure to discharge their obligation under the contract of March 14, 1932, that brought about the foreclosure of the deed of trust then held by the New York Life Insurance Company. The evidence is indubitable and conclusive that it was plaintiffs' intention to pay the Bertha M. Cox note from the proceeds of a loan which they attempted to secure from the Federal Land Bank. Subsequently and after the foreclosure sale, plaintiffs renewed their application to the Federal Land Bank for a loan, and the evidence is equally indubitable and conclusive that it was plaintiffs' purpose then to discharge the lien of the Cox deed of trust then evidenced by a certificate of purchase. For purposes not disclosed by the record and through means of which it is silent, plaintiffs, on December 27, 1934, secured a warranty deed from Bertha M. Cox to the lands and water rights described in their contract of March 14, 1932, which warranty deed was made subject to "taxes

and encumbrances of record at the time of the foreclosure of the Deed of Trust." At the time plaintiffs received the warranty deed from Bertha M. Cox, the Federal Land Bank loan application had not been definitely approved, or, in any event, the proceeds were not then available. Under the evidence in this case, as we have said, plaintiffs' purpose and intention in securing a loan from the Federal Land Bank was to discharge the lands which they were then purchasing from the lien of the deed of trust securing the note held by the New York Life Insurance Company. Of this there can be no question of a doubt. On December 27, 1934, plaintiffs became the owners, by warranty deed, of the lands and the water rights described in their contract with Bertha M. Cox on March 14, 1932, subject to the lien of the certificate of purchase. When the Farm Loan Bank funds were made available subsequent to December 27, 1934, and the certificate of purchase was assigned to plaintiffs, they should have surrendered the certificate of purchase and have freed the premises from that lien. The record shows that on November 1, 1934, in anticipation of the loan to be made, plaintiffs executed their note for $13,000.00 payable in installments to the Federal Land Bank of Wichita. They secured the payment of their note by a real estate mortgage of even date therewith. In this mortgage we find the following provisions:

"The mortgagor does hereby covenant and agree with the mortgagee, as follows: 1. To be now lawfully seized of the fee simple title to all of the said above described real estate; to have good right to sell and convey the same; *that the same is free from all encumbrances;* and to warrant and defend the title thereto against the lawful claims or demands of all persons whomsoever.

\* \* \*

"5. To use the proceeds arising from the loan secured hereby solely for the purpose set forth in mortgagor's written application for said loan." (Italics ours)

It is significant that the lands and water rights described in this mortgage were the identical lands and water rights described in the contract of March 14, 1932, between plaintiffs and Bertha M. Cox and identical with the lands and water rights described in the warranty deed of Bertha M. Cox to plaintiffs under date of December 27, 1934.

We have said that the written application and the correspondence between plaintiffs and the Federal Land Bank appearing in the record is indubitable proof that the purpose for which the loan was sought was to discharge the indebtedness held by the New York Life Insurance Company. Had plaintiffs so applied the proceeds of the loan from the Federal Land Bank when available, to the purpose for which the loan was made, they would have paid the New York Life Insurance Company the amount due it and surrendered the certificate of purchase, thus redeeming the lands from the foreclosure sale. Instead of following this course, which was in keeping with their agreement with Bertha M. Cox, and in keeping with their representations to the Federal Land Bank, plaintiffs held the assigned certificate of purchase until February 23, 1935, and then caused a public trustee's deed to be issued them under which they now contend that they are the absolute owners, not only of the lands and the water rights which they agreed to purchase from Bertha M. Cox but also other additional water rights. It must be conceded that if plaintiffs acquired additional water rights under the public trustee's deed, under the facts and circumstances of this case, the judgment entered by the trial court is wrong and must be reversed. On the other hand, if the public trustee's deed, notwithstanding its terms, amounted to a merger or payment or an extinguishment of the obligation which plaintiffs had assumed and agreed to pay, the judgment is right and should be affirmed unless other prejudicial error intervened.

We have made a rather exhaustive search for some decision involving a factual situation such as here presented, but without success. Counsel have failed to call our attention to any decision particularly helpful. We do believe, however, that the following quotations from noted authorities are universally accepted as a correct statement of the law applicable to mortgages and equally applicable to the question here.

"Where the mortgage itself is transferred by assignment or otherwise to the owner of the mortgaged premises, there is, in the absence of a contrary intent or of facts from which a contrary intent may be inferred, a merger operating to discharge the lien of the mortgage and the indebtedness. The owner of the property may be denied the right to claim subrogation to the prejudice of a junior lienor. * * *

"Whether there is a merger by an assignment of a mortgage to the mortgagor rests upon the intention, actual or presumed, of the person in whom the estates are vested. The intent is the test; and if the intent is that no merger should result, such intent will be given effect, at least in equity. * * *." Wiltsie on Mortgage Foreclosure (5th ed.), p. 436, §249.

"On the other hand, if payment of the mortgage debt is made to the mortgagee or other holder of the mortgage, by a party who is himself personally and primarily liable for the debt, who is in any manner and by any means the actual primary debtor, whose duty it is to pay the debt absolutely, and before all others, such payment operates *ipso facto* as an end of the mortgage, and the lien is completely destroyed. The party so paying is not subrogated to the rights of the mortgagee; there is no equitable assignment to him of the mortgage security; even if he should receive a formal assignment, the mortgage could not be thus kept alive, but would be wholly merged and ended." 3 Pomeroy's Equity Jurisprudence (3d ed.), p. 2424, §1213.

Plaintiffs, by their assumption and agreement to pay the indebtedness evidenced by the Bertha M. Cox note and held by the New York Life Insurance Company, became personally and primarily liable for that indebtedness. Under those circumstances we are convinced that the law is rather definitely established that where the payment of a lien indebtedness, in no matter what form it is evidenced, is made to the holder thereof by parties who are personally and primarily liable therefor and whose duty it is to pay it, such a payment, no matter what form the indebtedness assumes, operates to discharge any lien. The lien becomes completely destroyed for all purposes. Under such circumstances the persons paying the lien indebtedness are not entitled to be subrogated to the rank of the holder of the lien, there is no equitable assignment to them, and even though they receive a formal assignment, the lien cannot thereby be kept operative but becomes wholly merged and ended, and the loan and the evidence thereof bcomes absolutely extinguished. If we should hold that plaintiffs were entitled to the water conveyed by the public trustee's deed, in effect we would be giving them more because they breached their contract than they would have received had they fully complied with and discharged their obligations thereunder.

Under the circumstances here, when plaintiffs acquired the certificate of purchase they should have surrendered it and thereby redeemed the lands and water rights from the public trustee's sale, and any other use of it would give them no additional advantage. This, notwithstanding the fact that more irrigation water was described in the public trustee's deed than in the contract under which plaintiffs were purchasing the water rights and under the deed which they accepted in compliance with their contract with Bertha M. Cox. Plaintiffs acquired no additional rights by virtue of the public trustee's deed; their rights are to be determined by the terms of the contract and warranty deed from Ber-

tha M. Cox to them under date of December 27, 1934. To hold otherwise would be inequitable. We are strengthened in our position by the fact that by long use, as well as by contract between the plaintiffs and the owner of these water rights, the land owners under the Liddle ditch have used the water therein interchangeably and without reference to priorities.

Under the evidence in this case and the law applicable thereto, the court's decree limiting plaintiffs' rights in irrigation water under the Liddle ditch was correct.

3. What we have said with reference to plaintiffs' specification No. 1 sufficiently answers specification No. 3 as to which we hold that the trial court did not commit error, of which plaintiff can rightfully complain, in awarding six and one-half cubic feet of water per second of time to defendants Lechman and Johnson.

4. Under our construction of the deed from Bertha M. Cox to plaintiffs, we are of the opinion that the water rights decreed to the Liddle ditch under priorities 18 A and 18 B were to be considered, used and applied without reference to priorities. The evidence discloses that this use and enjoyment and application was the practice and custom of the water users under the Liddle ditch for many years prior to this litigation, and while it is possible that the interchangeableness of priorities 18 A and 18 B might have been more specifically set out, the intention of the parties, as well as the trial court in that regard, seems to us to be clear. The trial court so interpreted and construed the evidence, and nothing is presented which justifies us in disturbing its decree in this respect.

The judgment and decree of the trial court is right and accordingly is affirmed.