Opinion by
Mr. Chief Justice McWilliams.
The following chronology of dates and events is deemed essential to an adequate understanding of the controversy here to be resolved.
On May 7, 1956, Edward MacClain and his wife, Berniece, executed a promissory note wherein they promised, for value received, to pay Northwestern Loan & Investment Company, hereinafter referred to as Northwestern, the sum of $13,000 with interest thereon from “the date hereof, until paid, at the rate of 2% per month computed upon unpaid balances.” Specifically, in the note they promised to pay “35 consecutive installments of $509.60 each, on the 10th day of each month hereafter, beginning June 10, 1956,” with the final payment to be due and payable on May 10, 1959.
*92 To secure payment of the note the MacClains simultaneously executed and delivered to Northwestern a deed of trust on certain realty jointly owned by them, situate in Jefferson County, which was subject to a prior deed of trust in favor of Industrial Federal Savings & Loan Association. The association will hereinafter be referred to as Industrial Federal. This deed of trust in favor of Northwestern was duly recorded on May 22, 1956.
On August 30, 1956, Alcove’s, Inc., a corporation, caused to be recorded with the Jefferson County Clerk & Recorder a certain judgment theretofore rendered in its favor against Edward MacClain. Thereafter on September 12, 1956, a sheriff’s certificate of purchase of the interest of Edward MacClain in and to said property issued to Alcove’s, Inc., and a sheriff’s deed conveying to Alcove’s, Inc., the interest of Edward MacClain in said property (but not the interest of Berniece MacClain) subsequently issued and was duly recorded on June 13, 1958. By mesne conveyances S & S, now in receivership, became the owner of Alcove’s interest in and to said property.
On September 20, 1956, and again on September 23, 1958, the United States of America caused to be filed with the Jefferson County Clerk & Recorder certain notices of tax liens resulting from the MacClains’ failure to pay income taxes due the United States.
Similarly, on June 23, 1958, the State of Colorado caused to be recorded with the Jefferson County Clerk & Recorder its notice of tax lien against any and all property owned by the MacClains, the MacClains having also failed to pay income taxes due the State of Colorado.
In the spring of 1958, Edward MacClain became employed as a salesman of insurance and securities for Universal Securities, Inc., with offices in North Dakota. This Company will hereinafter be referred to as Universal. As a part of MacClain’s contract of employment *93 his new employer, Universal, agreed to advance the money necessary “to get the note and deed of trust out of Northwestern’s hands,” the advance to be against future commissions to be earned by MacClain. Accordingly, by prearrangement Northwestern on May 8, 1958, delivered the aforementioned note, the deed of trust and an executed release of the deed of trust to its bank, the Union National Bank of Denver, with instructions to sight draft Universal through the Dakota National Bank and upon payment of the sight draft to then mark the note and deed of trust “paid” and deliver the same, along with the release of deed of trust, to Universal.
A sight draft drawn upon Universal in the amount of $9,355, this sum representing the balance due Northwestern on the note, was honored some time in June 1958, and the money thus realized was credited to Northwestern’s account in the Union National Bank, with the note, deed of trust and release of deed of trust being delivered to Universal.
On September 21, 1958, Edward MacClain telephoned Jacob Chisen, his attorney, and advised him that he had just received from Universal his note to Northwestern, the deed of trust and the release of deed of trust and, according to Chisen, MacClain “wanted to know what to do with it.” By way of reply, Chisen suggested that MacClain “send it on down to me on what you owe me.” This was done, and on September 22, 1958, Chisen received the aforementioned note, deed of trust and release of deed of trust. Chisen had done much legal work for the MacClains over a period of several years, and as of September 22, 1958, the MacClains admittedly owed him some $8,400 for legal services theretofore rendered.
On December 10, 1959, the MacClains executed and delivered an assignment whereby in writing they “acknowledged and confirmed” their prior oral assignment to Chisen on September 22, 1958, of the note and deed of trust.
On this state of events Chisen filed a complaint under *94 Rule 105, Colo. R.C.P., the defendants being, among others, the MacClains, the Industrial Federal, S & S, the United States of America and the State of Colorado. Chisen alleged in his complaint that he was the holder and owner of the Northwestern note and deed of trust; that the note was in default, the MacClain’s having made no payments thereon since September 22, 1958, and that hence they owed him $9355 plus interest and attorney’s fees. Chisen also sought foreclosure of his deed of trust and prayed for “a complete adjudication of the relative rights of all the parties in and to the aforesaid real property.”
By pre-trial order it was agreed by all that the interest of Industrial Federal in the subject property was superior to that of any other party and appropriate protective orders in this regard were duly entered. The only dispute is between Chisen on the one hand and S & S, the United States of America and the State of Colorado on the other, Chisen claiming that he is a holder in due course of the Northwestern note and deed of trust and that inasmuch as this deed of trust was recorded on May 22, 1956, his interest is therefore senior to all, save and except the interest of Industrial Federal.
S & S, the United States of America and the State of Colorado have no dispute among themselves as to their respective interests in the subject property and their relative priorities, but all claim that Chisen’s interest, if any, is junior to each of theirs. They contend that Chisen is not a holder in due course of the Northwestern note and deed of trust and that said note and deed of trust were “paid and discharged” in June 1958 and in any event “cannot be revived so as to take priority” over their respective interests.
In holding that Chisen’s interest was senior and therefore superior to that of S & S, the United States of America and the State of Colorado, the trial court as a basis therefor stated that it “felt that the intent of MacClain was to give . . . [Chisen] the note and deed of trust as *95 payment of the indebtedness owed by . . . MacClain to . . . [Chisen] for services rendered” and further that the Court was “of the opinion that the note and the deed of trust held by . . . [Chisen] is prior in time to the claims of the others.”
By the present writ of error S & S, the United States of America and the State of Colorado seek reversal of the judgment holding that their respective interests are junior to that of Chisen.
As noted above, the trial court based its disposition of the controversy on a finding that when on September 22, 1958, MacClain mailed Chisen the Northwestern note, deed of trust and release of deed of trust it was his “intent” that such constitute “payment of the indebtedness owed by MacClain to . . . [Chisen] for services already rendered. ...” In our view the crucial transaction is not the one involving MacClain and Chisen occurring on September 22, 1958, but the transaction occurring in June 1958 wherein Northwestern received $9,355 from Universal and in return therefor delivered to that company the note, deed of trust and release of deed of trust. The intent of the parties to this latter transaction and the legal significance of their actions is dispositive of the present controversy. In other words, if Universal acquired no interest in the subject property from Northwestern, then it in turn had no interest to assign to MacClain and — following through — MacClain had no interest to assign to Chisen.
So, the precise question to be resolved is whether Northwestern, the holder of a deed of trust on the subject property, assigned the interest created thereby to Universal. On the basis of the record before us we hold that it did not thus assign.
Universal did not purchase or “discount” the note in question in June 1958. Rather, acting in behalf of its employee — MacClain — -it paid Northwestern the balance due on the note, namely $9355. It is parenthetically noted that by the terms of the note the Mac *96 Clains promised to make 35 consecutive monthly payments of $509.60, beginning June 10, 1956, and a mathematical computation would indicate that if the balance due in June 1958 was $9355, then the note was in default.
Northwestern in turn delivered the note, deed of trust and a release of the deed of trust to Universal. Such would indicate a complete absence of any intent on the part of Northwestern to assign the interest created by said deed of trust to Universal. That the assignment was most definitely not the intention of Northwestern was borne out by the testimony of one Meer, an officer of Northwestern, who testified that some time in 1959 Chisen called and asked whether Northwestern would “endorse” the note which he then held. M!eer stated that he refused to thus “endorse” because “with our files showing that we were not assigning the note we naturally could not assign it at a later date.”
In Liddle v. Lechman, 114 Colo. 189, 163 P. (2d) 802, the following language is quoted with approval:
“ ‘On the other hand, if payment of the mortgage debt is made to the mortgagee or other holder of the mortgage, by a party who is himself personally and primarily liable for the debt, who is in any manner and by any means the actual primary debtor, whose duty it is to pay the debt absolutely, and before all others, such payment operates ipso facto as an end of the mortgage, and the lien is completely destroyed. The party so paying is not subrogated to the rights of the mortgagee; there is no equitable assignment to him of the mortgage security; even if he should receive a formal assignment, the mortgage could not be thus kept alive, but would be wholly merged and ended.’ 3 Pomeroy’s Equity Jurisprudence (3rd ed.) p. 2424, § 1213.”
Jones v. Sturgis, 118 Colo. 579, 199 P. (2d) 645, holds that when a note secured by a deed of trust on real property is fully paid and satisfied, the trust deed ceases to be a lien on the property.
In the instant case Universal, prompted by rea *97 sons of its own and acting on behalf of its employee, fully paid and satisfied the note, received no purported assignment of the deed of trust but on the contrary accepted a release of the same. Under these' circumstances the deed of trust ceased to be a lien and the fact that MacClain later came into possession of the note, deed of trust and release of deed of trust did not revive the lien interest.
In Gleason v. Dorney, 332 Mass. 646, 127 N.E. (2d) 184, a third party, i.e. not the mortgagor, paid the mortgagee the sum of $1000 on a $2500 mortgage, this sum representing a loss to the mortgagee in the amount of some $885.99 on the mortgage loan. In return therefor the mortgagee gave said third party a discharge of mortgage and the unendorsed mortgage note. Two and one-half years later, the third party asked and got a purported “assignment” of the mortgage from the erstwhile mortgagee. In holding that this “assignment” was invalid, the Supreme Judicial Court of Massachusetts held that there being no evidence of mistake or of any other fact which might justify equitable relief, “the purported assignment by the bank more than two and one-half years later was a nullity, for the bank at the time had nothing to assign.” (Emphasis supplied.)
The judgment is reversed and the cause remanded with directions that Chisen’s interest in the subject property, if any, be adjudged junior and inferior to the respective interests of S & S, the United States of America and the State of Colorado and for further proceedings consonant with the views herein expressed.
Mr. Justice Moore and Mr. Justice Frantz concur.