Robert B. **ROTTMAN**, Trustee for Pioneer Savings Stamps, Inc. of Colorado, Bankrupt, Appellant,

v.

**FIRST NATIONAL BANK IN GOLDEN**, Appellee.

No. 10057.

United States Court of Appeals
Tenth Circuit.

Feb. 4, 1969.

John H. Schultz, Denver, Colo., for appellant.

Conrad E. Gardner, Golden, Colo., for appellee.

Before PHILLIPS, HILL, and SETH, Circuit Judges.

SETH, Circuit Judge.

This action was commenced by appellant, the trustee in bankruptcy for Pioneer Savings Stamps, Inc., to recover as a preferential payment the sum of $20,135.00 which had been made by the bankrupt to the defendant bank on August 9, 1965.

The trial court concluded that the borrowing arrangement between the bankrupt and the bank was initially a security transaction and that the original agreement had been extended by the parties and was effective legally as against the trustee on the date that the asserted preferential transfer was made. From this judgment the trustee-plaintiff has taken this appeal.

The record shows that the initial loan by the bank to the bankrupt was in the amount of $50,000.00 and was made on August 18, 1964. The debt was represented by a promissory note payable on or before October 25, 1964, and it was secured by an assignment of accounts receivable. Notice of this assignment, pursuant to the then existing laws of the state of Colorado, was filed with the Secretary of State on August 19, 1964.

The record shows that thereafter by seven successive payments of $5,000.00, the balance of the note was reduced to $15,000.00. Then on October 12, 1964, a new note was executed in the amount of $50,000.00, making the total then due in the amount of $65,000.00. Thereafter on October 13 and 20, two additional payments were made on the initial note and it was thereby paid in full. On October 30, an additional note was executed and the balance due then rose to $70,000.00. The record also shows that the parties agreed that the initial security arrangement would be extended to cover the additional loans thereafter made and the actions of the parties demonstrate that this agreement was carried out.

Following the dates above mentioned, additional extensions of credit were made by the bank to the bankrupt on the execution of renewal promissory notes and by the use of the same security arrangement. This course of action continued until August 9, 1965, when the payment in question was made by the bankrupt to the bank in the amount of approximately $20,000.00 which payment reduced the balance due to the bank to zero.

It is, of course, this final payment which was challenged by the trustee under section 60 of the Bankruptcy Act as it occurred within four months of Pioneer's bankruptcy. It should also be noted that this final payment was within one year after the filing of the above referred to Notice of Assignment of Accounts Receivable (August 19, 1964). Reference is made to this period of one year for the reason that under the laws of Colorado (1963 C.R.S. § 11-2-3), such a notice was valid for a period of one year after filing. This same section also provided that such assignment could be sooner cancelled.

The assignment of accounts referred to above provided expressly that when the debt it secured was paid in full, then it was to be "void." The trustee here urges that the assignment of accounts given as security thus expired by its own terms when the initial note was paid in full. Also he argues that under the laws of Colorado the security arrangement was not effectively extended by the verbal agreement of the parties. The trustee further argues that the initial security arrangement did not purport to cover subsequent extensions of credit.

There is no dispute as to many of the facts and legal conclusions referred to above. For instance there is no question but the initial assignment and Notice then created a valid security arrangement between the parties which

was effective until the initial note was paid in full. As indicated above, the record shows also that the initial note was not paid in full until after additional credit had been extended by the bank and a new note had been executed. The record shows and the trial court found that the parties had agreed that the initial assignment would be effective and would secure subsequent extensions of credit. It is also beyond question that under the Colorado law as it then existed, the security arrangement of the type here concerned, when proper notice was given, would be effective for a period of one year unless sooner terminated. The initial assignment provided that it would be void when the initial indebtedness it secured was paid in full, and this was modified verbally.

Thus we have before us several interrelated factors which must be evaluated before it can be determined whether or not the security arrangement was effective as against the trustee. The course of dealings between the bank and the bankrupt indicate a continuous extension of credit which was accomplished following the initial note by the execution periodically of renewal or additional notes. The liability ledger of the bank which is in evidence shows that during all of the period which is here significant, the balance due by the bankrupt was never less than $15,000.00 and ranged from there to $70,000.00. This ledger also shows that the proceeds from renewal notes were used to discharge the unpaid balance on previous notes. It is particularly significant in view of the wording of the assignment that the first extension or renewal note of October 12, 1964, in the amount of $50,000.00 was thus executed prior to the maturity date of the initial note. On October 30, 1964, an additional note was given in the amount of $20,000.00. These facts together with the clearly established oral modification of the initial agreement demonstrate that the parties intended the assignment to continue in effect. The trustee urges that this extension cannot be done verbally as the Colorado statute requires written notices to be filed although no reference is made in the Act to extensions of the initial assignment.

Appellant calls to our attention the case of Jones v. Sturgis, 118 Colo. 579, 199 P.2d 645 (1948), which stands for the proposition that payment of a debt automatically terminates the security interest. The appellant urges that this case is authority for the proposition that automatically appellee could retain no security interest when the original $50,-000.00 loan was paid. Also see Liddle v. Lechman, 114 Colo. 189, 163 P.2d 802 (1945). However, as appellee points out the Jones case involved a mortgage on real estate, which, under the usual practice and most statutory law, distinguishes it from the case at hand. The finding of the trial court in the cited case rested upon "undisputed evidence" as to oral discussions between the parties that the creditor would accept $200 less on the note. It would be reasonable to assume that such finding by the court would support the appellee's contention here that its original $50,000.00 loan and assignment of accounts receivable could be later orally modified to include the subsequent loans. In Second National Bank of Houston v. Phillips, 189 F.2d 115 (5th Cir. 1951), also cited by the parties, a valid notice of assignment as to accounts receivable had been recorded pursuant to statute. The court held that it was not necessary to file new notice every time the form of the loan was changed as the notice feature had been met by the original filing:

"The view of referee and court in effect, as it seems to us, that it was the duty of the bank to file a new notice, under the statute, every time it changed the form of the loan, is not, in our opinion, correct. The statute does not require a statement of the contents of the assigned accounts or of the contract under which they are assigned, but merely of the existence of the arrangement for assigning them. Its purpose is, by giving the name and address of the borrower as well as of the lender: to give notice

to all persons dealing with it of the fact that the debtor had assigned, or intended to assign, accounts; and to afford persons dealing, or intending to deal, with the borrower, adequate opportunity to find out the facts as to his situation."

Appellant cites as to future advances United States Fidelity & Guaranty Co. v. First National Bank of Fort Morgan, 147 Colo. 446, 364 P.2d 202 (1961), and American Mining Co. v. Himrod-Kimball Mines Co., 125 Colo. 186, 235 P.2d 804 (1951), but these cases are not pertinent in view of the changes made in the original agreement.

The trial court found the agreed unwritten extension of the security agreement to be in conformance with the law of Colorado and to create a legal security interest effective against the trustee as to such advances and to those thereafter. This effective period would be for one year following the filing of Notice. We hold that the trial court was correct in its findings and conclusions as to this effective extension of the original assignment. There are no decisions by the courts of Colorado on this particular point which discuss written as against unwritten extensions, and we accept the determination of the law made by the United States District Court for the District of Colorado. Texaco, Inc. v. Pruitt, 396 F.2d 237 (10th Cir.); Pan American Petroleum Corp. v. Candelaria, 403 F.2d 351 (10th Cir. 1968). Thus it was not necessary that the extension and modification of the initial agreement of assignment be in writing, as the original document constituted sufficient notice to all under the state law. It was not required that additional documents be executed and filed as subsequent notes were executed. The parties under the record before us could and did effectively provide for the extension of the security arrangement to cover subsequent extensions of credit, and to alter the expiration provision initially agreed upon.

Affirmed.