STATE *v.* YOUNG.

It is not forgery at common law, or by our statute, for one to make a false charge in his own
   book of accounts.

Ordinarily, the writing or instrument which may be the subject of forgery, must be, or pur-
   port to be, the act of another, or it must at the time be the property of another, or it must
   be some writing or instrument under which others have acquired some rights, or have in
   some way become liable, and where these rights or liabilities are sought to be affected or
   changed by the alteration without their consent.

A forged writing or instrument must, in itself, be false, that is, fictitious, not genuine, a
   counterfeit, and not the true instrument which it purports to be, without regard to the
   truth or falsehood of the statement which the writing contains.

The grand jury found a bill of indictment against the respondent con-
taining two counts as follows, viz:

"The grand jurors for the State of New Hampshire, upon their oath,
present that Otis Young, junior, of Plymouth, in the county of Graf-
ton, husbandman, on the twenty-fifth day of July, in the year of our
Lord one thousand eight hundred and sixty-five, at Gilford, in the coun-
ty of Belknap aforesaid, with force and arms, did falsely make and coun-
terfeit a certain writing purporting to contain evidence of the existence
of a certain debt, contract and promise, contracted and made by one
Charles C. Rogers of Sanbornton, in said county of Belknap, Esquire,
for the payment of fifteen dollars, which said false and counterfeit writ-
ing is as follows: '159, March 14. C. C. Rogers, Dr., To one vest
chain, $15,' contained in a certain book of accounts of him the said
Otis Young, junior, with intent, him the said Charles C. Rogers, to de-
fraud, contrary to the statute in such case made and provided and against
the peace and dignity of the State.

And the jurors aforesaid, on their oath aforesaid, do further present,
that said Otis Young, junior, on the day and year aforesaid, at Gilford
aforesaid, in the county aforesaid, with force and arms feloniously did
falsely and fraudulently alter a certain writing purporting to contain
evidence of the existence of a certain debt, contract and promise, con-
tracted and made by Charles C. Rogers of Sanbornton, in said county
of Belknap, Esquire, for the payment of fifteen dollars, which said
writing, so falsely and fraudulently altered was originally contained in a
certain book of accounts of him the said Otis Young, junior, as follows,
that is to say, '159, March 14, C. C. Rogers, Dr., To one vest chain,
$5,' by inserting the figures '15' instead of the figure '5,' thereby caus-
ing said writing to read as follows: '159, March 14, C. C. Rogers,
Dr., To one vest chain, $15,' with intent, him, the said Charles C.

Rogers to defraud, contrary to the statute in such case made and provided and against the peace and dignity of the State."

To this indictment the respondent demurred generally and the State join, and the questions of law were reserved.

*Blair*, Solicitor for State.

*J. & J. W. Burrows*, for defendant.

SARGENT, J.   *Lord Coke* says : "To forge is metaphorically taken from the smith who beateth upon his anvil and forgeth what fashion or shape he will ; the offence is called *crimen falsi*, and the offender *falsarious*, and the Latin word to forge is *falsare* or *fabricare*, and this is properly taken where the act is done in the name of another person." 3 Inst. 169.

"Forgery at common law denotes a *false* making (which includes every alteration or addition to a true instrument,) a making *malo animo*, of any written instrument for the purpose of fraud and deceit." 2 East. P. C. 852.

Forgery is the false making or materially altering, with intent to defraud, of any writing which, if genuine, might apparently be of legal efficacy, or the foundation of a legal liability.   1 Bish. Cr. L. sec. 423 ; 2 Bish. Cr. L. sec. 432.

Our statute against forgery is as follows : "If any person shall falsely make or counterfeit or fraudulently alter any public record, any writ, process, or proceeding of any court of this State, any certificate or attestation of a justice of the peace, notary public, clerk of any court, town clerk or other public officer, in any matter wherein such certificate or attestation may be received as legal proof, any charter, will, deed, bond or writing obligatory * * * bill of exchange, promissory note, order, acquittance, discharge for money or property, * * * any certificate or accountable receipt for money or property, any warrant, order, or request for the payment of money, or the delivery of any property or writing of value, *or any writing whatever purporting to contain evidence of the existence or discharge of any debt, contract or promise,* with intent that any person may be defrauded, he shall be punished," &c.

The indictment in this case was intended to be founded upon the last clause of the statute, and it is claimed that the entry upon his account book by the respondent of a charge against the complainant for a vest chain, was a writing purporting to contain evidence of the existence of a debt, contract or promise, within the true meaning and intent of the statute.

In examining our statute it will be seen that almost every form of writing or instrument known to the law is specifically enumerated as the subject of forgery, but no mention is made of accounts or books of account.   Is it not probable, that, if the law was intended to apply to so common a thing as accounts, they would have been mentioned with the other writings specified ?

The terms "writing," "instrument," and "written instrument," are used indiscriminately in defining forgery at common law. Thus *Blackstone* says forgery is the fraudulent making or alteration of a writing, &c. *Baron Eyre* says it is the false, making of an *instrument,* &c. *Grose, J.,* says it is the false making of a note or *other instrument,* &c. *East* says it is the false making of *any written instrument,* &c. 2 East.'s P. C. 852–3. We see no reason why the term "writing" in our statute is not to be understood in the same technical sense as when used by these early writers, when defining forgery at common law.

It has been held in New York, that, at common law, an indictment for forging an order, by fraudulently altering its date by the signer of the order after it had been answered and returned to him, with intent to defraud the man to whom it was given, could not be sustained on the ground that when the order had performed its office, and was returned to the man who gave it, it was his own paper, and that to alter its date or even to write a new order like the first with only a change of date, would only be making a new order, which any man may do without its being forgery, even though done with a fraudulent intent, and because there was no intermeddling with an instrument or writing which was the property of another. It is also suggested, that, if a bill of exchange or promissory note be paid and taken up by the maker, who then for purposes of fraud alters the date of the note, such alteration would not constitute forgery at common law. *People* v. *Fitch,* 1 Wend. 198; *People* v. *Cady,* 6 Hill 490.

The statute of New York, which was in force in 1837, Rev. Stats. 560, 561, sec. 33, provided that "the counterfeiting, with intent to injure or defraud, of any instrument or writing, *being or purporting to be the act of another,* by which any rights or property whatever shall be or purport to be affected," &c., shall be forgery in the third degree. *People* v. *Stearns,* 21 Wend. 409.

So the statute of Missouri, against forgery, employs this phrase: "Any instrument or writing being or purporting to be the act of another, by which any pecuniary demand or obligation shall be or purport to be transferred, created, increased, discharged or diminished," &c. *State* v *Fowley,* 18 Missouri 445.

It may well be doubted whether these statutes enlarge or limit the common law in relation to forgery of instruments or writings, or whether they only simply express, in describing the offence, what had been understood as the legal construction of the word instrument or writing at common·law. For *Lord Coke* in his Institutes says, as we have before seen, that forgery "is properly taken where the act is is done *in the name of another person.*"

An exception to this rule is stated by Coke, and also in 1 Hale's P. C. 683, and in 1 Hawk. P. C. 263, and in 2 East's P. C. 855, and in some other of the older writers, that a person may be guilty of the false making of an instrument although he sign and execute it in his own name, in case it be false in any material part and calculated to induce and then to give credit to it as genuine and authentic, when it is false and deceptive. This happens, they say, where one having conveyed

land, afterwards, for the purpose of fraud, executes an instrument purporting to be a prior conveyance of the same land. Here, it is said, the instrument is designed to obtain credit by deception, as purporting to have been made at a time earlier than the true time of its execution.

But the Massachusetts commissioners, in their report of 1844, discard the doctrine, not deeming it well founded on authority, and Mr. Bishop, in his Criminal Law, vol. 2, sec. 481, says we may at least doubt whether the giving a second deed in the case put, could be deemed forgery in this country, where we have registry laws; but he adds, that perhaps if a man should surreptitiously get hold of his own instrument after it had been delivered, and alter it, the alteration would be forgery, and he cites *People* v. *Fitch*, 1 Wend. 198, where it is said that if the maker of a bill of exchange, after acceptance, should alter the date whereby the payment was accelerated, that would be forgery. This would, of course, be so, because after the acceptance it becomes the contract of the acceptor, it is then his promise or writing, and an alteration by the maker would then be the altering of the writing of another. He also cites *Com.* v. *Mycall*, 2 Mass. 136, where a justice of the peace had issued a writ which had been served and returned, and he then altered it in a material part, and it was held forgery. We might also add that where a man had made a promissory note and delivered it to the payee, and while it was his property and in his possession, the maker should surreptitiously get possession of it, and so alter it as to make it read for a less amount, or to be paid at a more distant time, that might be forgery.

The rule, then, seems to be that the writing or instrument which may be the subject of forgery, must generally be or purport to be the act of another, or it must at the time be the property of another, or it must be some writing or instrument under which others have acquired some rights or have become liable in a certain way, and where these rights or liabilities are sought to be affected or changed by the alteration without their consent, as in case of the alteration of the writ above mentioned. In that case if the magistrate had made some mistake in his writ, he was at perfect liberty to correct the error, and to make any alteration he saw fit, before it went from his hands for service; but after service and return, when the rights and liabilities of others had become involved, and others had become interested by being made parties to the proceeding, such an alteration might be forgery if material and made without their consent.

A man may make a statement in writing of a certain transaction, and may represent and assert ever so strongly that his statement is true, but if it should prove that by mistake he is in an error, and that his statement is entirely wrong, that could not be forgery; and suppose we go further, and admit that the statement was designedly false, when made, and so made for the purpose of defrauding some one, it does not alter the case, it is no forgery. The paper is just what it purports to be, it is the statement of the man that made it, it is a true writing or paper, though the statement it contains may be false. The truth may be forged as well as falsehood.

So, in case of a charge on book account, the charge may in the first instance be erroneous, and no one would claim that the person making it might not correct it, so as to make it right, and that would be no forgery. But if A. gives B. his promissory note, and by mistake the amount of the note is made ten or fifty dollars too small, B. cannot alter the note after he has received it of A., so as to correct this error without the consent of A. That would be forgery.

A. may make a charge on his book against B. for an article which B. never had, or he may charge for an article actually delivered a larger sum than was agreed on. It is a false account, and may have been so made for the purpose of defrauding B., but it is no forgery. The writing is just what it purports to be, a charge made by A. on his book against B.; it may be wrong in amount, or the whole charge may be a fabrication throughout, still it is A.'s charge against B., and though wrongfully made is no forgery. To forge a writing necessarily implies that a writing be made which shall appear and purport to be something which it is not in fact, or that a writing be so changed or altered that it shall not be or purport to be what it was designed to be. But in making a false account the writing is what it was designed to be.

To forge or to counterfeit is to *falsely make,* and an alteration of a writing must be *falsely made* to make it forgery at common law, or by our statute. The term *falsely,* as applied to making or altering a writing in order to make it forgery, has reference not to the contracts or tenor of the writing, or to the fact stated in the writing, because a writing containing a true statement may be forged or counterfeited as well as any other, but it implies that the paper or writing is false, not genuine, fictitious, not a true writing, without regard to the truth or falsehood of the statement it contains—a writing which is the counterfeit of something which is or has been a genuine writing, or one which purports to be a genuine writing or instrument when it is not. The writing or instrument must in itself be false, not genuine, a counterfeit, and not the true instrument which it purports to be.

We think it plain that a man cannot falsely make or falsely alter his *own account against another* while in his own book and in his own possession, and before any settlement or adjustment of the same, whereby any person but himself has acquired any interest in or right to the same, as evidence or otherwise, so as to make it forgery. He may make false charges in his book, or he may alter charges on his book so as to make them more true or more false, so far as the contents of the charge is concerned, but still it is his own account; just what it purports to be; it is his own property in which no one has acquired any right or interest; it is his own true writing, as much if the charge is false as though it were true. The character of the writing, as being false or fictitious, instead of genuine, is not altered by the truth or falsity of the statement that the writing may contain.

Our attention has been called to two cases by the State's counsel, as favoring the doctrine that this indictment may be sustained. The first is *Biles* v. *The Commonwealth,* 32 Penn. State R. (8 Casey) 529, where it was held that the making of a false entry in the journal of a

mercantile firm by a confidential clerk and book-keeper, with intent to defraud his employers, is a forgery at common law. Edwin R. Biles, the defendant, was charged with having made a false and forged entry in the journal of Haskins, Hieskell & Co., with intent to defraud said firm. It was charged that said Biles was, at the time, the confidential clerk and book-keeper of said firm, and was entrusted and employed by them to keep the books of said firm, to make entries therein, and to have the sole charge and keeping of said books of account, and of the posting, settlement and balancing thereof. The clerk had, under the head of "Cash Dr. to sundries," entered twelve bills receivable, amounting in all to $6455.63, when correctly footed, but had altered or forged the footing and carried it out $5955.63, the result of which forgery was to represent the cash received five hundred dollars less than the actual amount, and thereby enable the clerk to abstract that sum from the funds of the firm. Upon this evidence and proof that Biles was clerk and book-keeper as charged, a verdict of guilty was sustained.

The decision seems to be based upon the ground that the entry in question was, as between the clerk and the firm for whom he acted, in substance an acquittance, or in the nature of a receipt from the firm to the defendant; that, as confidential book-keeper, he received the amount of bills receivable; to discharge himself from liability, he enters the several items in the journal, *as the agent of the firm,* and then, not as the agent of the firm, but as an individual, for his own wicked gain, so erases, or alters, or makes a figure or figures in the sum total, representing the addition of the entire entry, as to deceive and thereby defraud his employers. The court say: "We can see no distinction between this case and the very numerous decided cases, wherein to forge a receipt has been held to be a forgery."

Upon the ground assumed by the court in that case, it is in accordance with the other adjudged cases; but whether the court were correct or not in all their conclusions in that case, the decision is clearly no authority for the validity of this indictment.

The other case referred to, is *Barnum* v. *The State,* 15 Ohio 717. Barnum had been indicted and convicted of forgery under the following circumstances. Barnum had an account against one Ayer, which was settled in full on Barnum's book, March 1, 1841, and this settlement was signed by both parties, or purported to be, in full of all demands to date; and, on the 30th day of April, 1845, Barnum fraudulently altered the figure 1 into a figure 4, so that it then purported to be a settlement in full to March 1, 1844, the said Ayer then holding a claim for hats and cloth against Barnum, which had accrued between 1841 and 1844, and which was therefore designed falsely to be brought within the terms of the settlement, and to be cut off or discharged by it with intent to defraud said Ayer. It was held that the charge was well made and the indictment sufficient, but the verdict was set aside because certain evidence was excluded on trial, which was held to be competent and material.

In this case, although the receipt was signed by both parties on the defendant's book, yet it was the receipt of both parties in which both

had an interest, and to the benefit of which both had a right, and for either falsely or fraudulently to alter it was just as much forgery as though it had been signed by the other party alone, which would be the ordinary case of forging a receipt of another person, which, at common law and by the express provisions of our statute, would be forgery. We have been unable to find any case or any precedent which in any way authorizes the present indictment, and from the examination we have made, we are satisfied that the demurrer must be sustained.

*Indictment quashed.*