No. 19,549.

UNITED STATES FIDELITY AND GUARANTY COMPANY *v.*
THE FIRST NATIONAL BANK OF FORT MORGAN.
(364 P. [2d] 202)

Decided August 14, 1961. Rehearing denied September 5, 1961.

Messrs. HODGES, SILVERSTEIN, HODGES & HARRINGTON, Mr. JOHN BROOKS, JR., for plaintiff in error.

Mr. GEO. A. EPPERSON, Mr. DONALD F. McCLARY, Mr. DAVID L. ROBERTS, for defendant in error.

*In Department.*

Opinion by MR. JUSTICE MOORE.

WE will refer to plaintiff in error as Guaranty Co. and to defendant in error as the Bank.

The action was commenced by the Bank against Guaranty Co. and the prayer of the complaint was that judgment enter in favor of the Bank for the sum of $2,604.71 allegedly due under the terms of a bond issued to it by Guaranty Co. This bond covered the Bank (among other matters not here pertinent) against the following losses:

"(E) Any loss through the Insured's having, in good faith and in the course of business whether for its own account or for the account of others, in any representative, fiduciary, agency or any other capacity, either gratuitously or otherwise, purchased or otherwise acquired, accepted or received, or sold or delivered, or given any value, extended any credit or assumed any

liability, on the faith of, or otherwise acted upon any securities, documents or other written instruments which prove to have been *counterfeited or forged as to the signature of any maker,* drawer, issuer, endorser, assignor, lessee, transfer agent or registrar, acceptor, surety or guarantor or as to the signature of any person signing in any other capacity, or raised or otherwise altered or lost or stolen, or through the Insured's having, in good faith and in the course of business, guaranteed in writing or witnessed any signatures, whether for valuable consideration or not and whether or not such guaranteeing or witnessing is ultra vires the Insured, upon any transfers, assignments, bills of sale, powers of attorney, guarantees, endorsements or other documents upon or in connection with any securities, obligations or other written instruments and which pass or purport to pass title to such securities, obligations or other written instruments; * * * (Emphasis supplied.)

The facts are not in dispute; essentially they are as follows: Between August 31, 1956, and October 1, 1956, the Bank loaned one George Q. Hood a total of $13,613.24. Hood was engaged in the oil well service business. The loans by plaintiff were secured by the assignment by Hood of accounts receivable, evidenced by invoices representing goods delivered and services performed. Hood assigned in writing, among others, four invoices totalling $2,604.71 purporting to represent goods and services which never were furnished to the persons named therein as debtors. These invoices were prepared by Hood and assigned to the Bank with intent to defraud. Hood became insolvent and the Bank suffered a $2,604.71 loss for which it claimed indemnity from Guaranty Co. under its bond. The Bank claims that the invoices were forgeries and counterfeit within the meaning of the bond. Guaranty Co. denies that they were forgeries or counterfeit within the meaning of the bond or otherwise.

The trial court found that the invoices admitted in

evidence showed, " * * * a sale of goods, and services rendered by George Q. Hood to the customers, when in fact no such goods or services were ever rendered." It further found that, " * * * said invoices were falsely made and made with intent to defraud the plaintiff," and concluded that the invoices in question were " * * * * forgeries within the meaning and intent of the bond or are counterfeit within the meaning of the intent of the bond * * *." Judgment entered as prayed for by the Bank, and Guaranty Co. seeks review by writ of error.

## Question to be Determined.

*Where a borrower obtains money from a bank and as security for the repayment thereof assigns invoices for services and materials purporting to have been supplied to customers when in fact no such services or materials were ever supplied, the invoices being fictitious but regular in form and appearance, and the pretended customers nonexistent, and on the faith of such false and fraudulent invoices the bank advances money on the security thereof and suffers loss as the result of the fraud, may the bank recoup its loss against a guarantor pursuant to the terms of a bond which insures against losses occasioned by acceptance of " * * * securities, documents or other written instruments which prove to have been counterfeited or forged as to the signature of any maker, drawer, issuer, endorser, assignor, * * * "?*

The question is answered in the negative. It is argued by counsel for the Bank that the pertinent language of the bond was prepared and offered by a compensated surety company; that if that language is susceptible of two constructions, one of which is favorable to the Bank and the other to the bonding company, that interpretation which is most favorable to the Bank must be adopted if consistent with the objects for which the bond was given. It is assumed that an ambiguity appears on the face of the bond because of the use therein of the phrase "securities * * * which prove to have been *counterfeited or forged* as to the signature of any maker,

* * *." It is argued that we should construe the phrase to provide coverage in the instant case. We are not unmindful of the rule which requires that ambiguous language in an insurance contract must be most strongly construed against the person who prepared it. This well established rule is stated and discussed at some length in *American Surety Co. v. Pauly,* 170 U.S. 133, 18 Sup. Ct. Rep. 552, 42 L. Ed. 977. The opinion contains a number of citations of authority which we need not include here. However, we cannot overlook the equally well established principle that an insurance carrier or indemnitor against loss cannot be held liable beyond the scope of risks which have been clearly covered in its contract.

We find no ambiguous language in the contract here in question. In determining the rights and liabilities of parties to a written contract, the language used therein must be construed in harmony with the plain and generally accepted meaning of the words employed. *Hammond v. Caton,* 121 Colo. 7, 212 P. (2d) 845. In *People ex rel. Park Reservoir Company v. Hinderlider, et al.,* 98 Colo. 505, 57 P. (2d) 894, it was said, inter alia:

"Where the language used is plain, its meaning clear, and no absurdity is involved, Constitution, statute or contract, must be declared and enforced as written. There is nothing to interpret."

It is clear from the language of the bond that the liability of Guaranty Co. is limited to instruments which have been "*counterfeited* or *forged* as to the *signature* of any maker, drawer, etc.*" It is not contended here that a false signature appeared upon any of the invoices involved. The words "counterfeited or forged" even though not specifically connected to the signatures upon an instrument, do not include in their meaning the making of a false statement of fact within the body of an instrument otherwise genuine. The Colorado statute defining forgery and counterfeiting is C.R.S. '53, 40-6-1, the substance of which is as follows:

"Every person who shall falsely make, alter, forge or counterfeit any * * * writing obligatory * * * shall be deemed guilty of forgery * * *."

In *DeRose v. The People,* 64 Colo. 332, 171 Pac. 359, it was said: "To forge or counterfeit an instrument is to falsely make it." Before developing the significance of "false making" it must be remembered that the four invoices were the invoices of Mr. Hood. In the heading of each invoice appears the name "GEORGE Q. HOOD." Further, plaintiff confirmed this by identifying the four invoices as each being "an invoice of George Q. Hood." The invoices were what they purported to be — the true and genuine instruments of George Q. Hood. Thus there was no falsity with respect to the maker of the invoices. The only falsity consists of the statements contained in the invoices to the effect that George Q. Hood had furnished certain labor and material to the debtor. Therefore the question arises: Is there a "false making" of a genuine instrument which contains a false statement of fact therein?

The significance of "false making" has been fully discuseed in the last cited case, *DeRose v. People.* In that case the defendant made a time sheet which he certified as correct and sent it in to his employer as the basis of payroll. The falsity was that he "padded" the time sheet by crediting the workmen with more days than they had worked. In reversing the conviction of forgery the court said:

"This writing is what it purports to be: a true and genuine instrument, although it contains false statements. It is not a false paper, and the execution of such a document, does not constitute forgery. The prosecution failed to distinguish between falsely making an instrument, and making a false instrument, and this paper was not falsely made or forged. To forge or counterfeit an instrument is to falsely make it. The term 'falsely make' as used in the statute, refers to the paper itself as being false, and not the truth or falsity of its

statements. The statute refers to the false making or altering, and not to the tenor of the writing or the facts stated therein. A false statement of fact in an instrument, which is itself genuine, by which another person is deceived and defrauded, is not forgery.

"*State v. Young,* 46 N.H. 266, 88 Am. Dec. 212; *Territory v. Gutierrez,* 13 N.M. 312, 84 Pac. 525, 5 L.R.A. (N.S.) 375; *U. S. v. Glasener,* 81 Fed. 566.

"So in this case, defendant, when he made up and signed the time roll, did not make a false writing. The document itself is genuine, and the fact that he made a false statement in the writing, does not constitute the crime of forgery."

■ There is a striking similarity in the facts present in the instant case and those before the court in the *DeRose* case. The time sheet was genuine, and so were the four invoices. The time sheet contained an untrue statement of fact, and so did the four invoices. In this situation there was no "false making" of either instrument — the time sheet or the invoices. The clear result is that the four invoices were not "counterfeited or forged."

■ In saying that, "This writing is what it purports to be * * *," the court in the *DeRose* case was reflecting another essential of the doctrine of false making, namely, that the acts relied on to constitute the "false making" must purport to be the act of another person. For a discussion of this essential element in cases involving the terms "counterfeiting" and "forgery" see the following: *Marteney v. United States,* 216 F. (2d) 760 (10 Cir. 1954); *Wright v. United States,* 172 F. (2d) 310 (9 Cir. 1949); *Goucher v. State of Nebraska,* 113 Neb. 352, 204 N.W. 967, 41 A.L.R. 227 (1925); *State v. Adcox,* 171 Ark. 510, 286 S.W. 880 (1926). In *State v. Adcox,* supra, we find the following pertinent language:

"The term 'forge or counterfeit any writing whatever' refers to the writing as being forged and not to the falsity of its statements. A false statement of fact in an

instrument which is itself genuine, by which another person is deceived or defrauded, is not forgery."

The very recent case of *State Bank v. Maryland Casualty Co.*, 289 F. (2d) 545, contains a clear analysis of the meaning of the words "counterfeited or forged" as used in a bond in all respects similar to that in the instant case. The rule there announced is unquestionably supported by the great weight of authority.

The judgment is reversed and the cause remanded with directions to vacate the judgment and dismiss the action.

MR. JUSTICE DOYLE and MR. JUSTICE MCWILLIAMS concur.