The **FIRST NATIONAL BANK AND TRUST COMPANY OF OKLAHOMA CITY, OKLAHOMA,** Appellant,

v.

**UNITED STATES FIDELITY AND GUARANTY COMPANY,** a corporation, and **John Fawcett,** Appellees.

No. 7950.

United States Court of Appeals
Tenth Circuit.

June 23, 1965.

R. C. Jopling, Jr., Oklahoma City, Okl. (Fowler, Rucks, Baker, Jopling, Gramlich & Mee, Oklahoma City, Okl., on the brief), for appellant.

Edgar Fenton, Oklahoma City, Okl. (Fenton, Fenton, Smith & McCaleb, Oklahoma City, Okl., on the brief), for appellee United States Fidelity & Guaranty Co.

John A. Johnson, Oklahoma City, Okl. (Savage, Gibson, Benefield & Shelton, Oklahoma City, Okl., on the brief), for appellee John Fawcett.

Before MURRAH, Chief Judge, and PHILLIPS and HILL, Circuit Judges.

HILL, Circuit Judge.

Appellant commenced this diversity action in the Western District of Oklahoma to recover from its insurers the amount of a loss claimed to be compensable under a "Bankers Blanket Bond Insurance Con-

tract". From a judgment for the defendants, the plaintiff has appealed.

The facts are not in dispute. Appellant is a national bank located in Oklahoma City, Oklahoma. Appellee United States Fidelity and Guaranty Company is a Maryland insurance corporation which engages in business in the State of Oklahoma. Appellee Fawcett is an underwriter of Lloyd's of London.[1] United States Fidelity and Guaranty Company issued its Bankers Blanket Bond to appellant on April 22, 1952, in the amount of $50,000, which bond remained in force until April 22, 1961. Also, during this time, Lloyd's of London, represented here by appellee Fawcett, issued to the bank a similar bond for coverage in excess of $50,000 up to $1,000,000. On April 22, 1961, United States Fidelity and Guaranty Company issued its bond covering losses up to $1,000,000 and the Lloyd's of London policy was either cancelled or not renewed.[2]

In 1961, the appellant bank loaned $129,239.46 to the Sadler Brothers Pipe Line Construction Company, which loan was secured by Sadler assigning to the bank certain accounts receivable which were fictitious, although the signature of Sadler Pipe Line Construction Company in making the assignment was authentic.[3] The parties agreed that this indebtedness by Sadler Pipe Line Construction Company to the bank is uncollectible.

The indemnity bond issued by appellees contained the following clauses which are controlling here:

"THE LOSSES COVERED BY THIS BOND ARE AS FOLLOWS:
SECURITIES

(E) Any loss through the Insured's having, * * * extended any credit or assumed any liability, on the faith of, or otherwise acted upon any securities, documents or other written instruments which prove to have been counterfeited or forged as to the signatures of any maker, drawer, issuer, endorser, assignor * * *."

And further the bond provides under its exclusions that:

"Section 1. THIS BOND DOES NOT COVER:

(d) Any loss the result of the complete or partial non-payment of or default upon any loan made by or obtained from the Insured, whether procured in good faith or through trick, artifice, fraud or false pretenses, except when covered by Insuring Clause (A), (D) or (E)."

Thus, if appellant is to prevail, it must be under Insuring Clause (E) as neither Insuring Clause (A) or (D) are applicable here. The appellant conceded, we

1. Appellee Fawcett appeared in behalf of all of Lloyd's underwriters who underwrote the insurance of Lloyd's Banks' and Trust Companies' Policy No. 60009.

2. There was a dispute concerning which bonds covered the loss in question for if the loss was discovered before April 22, 1961, Lloyd's of London would be responsible for any loss in excess of $50,000; but if the loss occurred after that date, United States Fidelity and Guaranty Company would be solely responsible for the entire amount. The court below saw no reason to decide this matter in view of its determination that in any event, neither appellees were liable for this type of loss.

3. In all there were four invoices which were assigned. Each one was on a Sadler Brothers Pipe Line Construction Company invoice form and addressed to Champlin Oil and Refining Company indicating the amount of pipe line laid for Champlin and the price per foot. At the bottom of the invoice was written: "For Value Received, the within account is hereby assigned and transferred to the First National Bank and Trust Company of Oklahoma City, together with the right to collect the same," followed by the date and the signature of Roy E. Cook as President. The invoices were fictitious in that no pipe was laid for Champlin and hence there was no account receivable to assign.

believe, that the signature of Sadler Brothers Pipe Line Construction Company was not forged and that the part of Insuring Clause (E) concerning the forgery of a signature is not applicable. The appellant does invoke Clause (E), on the theory that the loss resulted from having " * * * extended * * * credit * * * on the faith of * * * securities, documents or other written instruments which prove to have been *counterfeited* * * *." The question to decide then is if these fictitious accounts receivable which were assigned to the bank can be considered counterfeited.

We know of only one case which squarely supports appellant's argument.[4] The Third Circuit in Fidelity Trust Company v. American Surety Company of New York, 268 F.2d 805 (3rd Cir., 1959) held in a like situation applying Pennsylvania law that Insuring Clause (E) applied and that invoices which covered fictitious transactions were counterfeit. That court indicated the term "counterfeit" should be construed in accordance with business language and, in that lexicon, it means something that purports to be what it is not.

██ The majority of courts which have encountered this problem have held these fictitious invoices and accounts receivable cannot be considered counterfeit within the meaning of Insuring Clause (E).[5] These courts in general agree that the term "counterfeit" means an imitation of an authentic document or writing or a resemblance intended to deceive and to be taken for the original. Clearly in this case, the invoices which formed the basis of the accounts receivable were not imitations of anything original or authentic, but mere fraudulent misrepresentations of fact, to-wit, that certain material had already been delivered. While it is presumed that Oklahoma law would apply, we have found no Oklahoma law which would be dispositive of the matter. The trial judge apparently believed that Oklahoma would follow the majority rule and we give great weight to his interpretation of the law unless it is clearly wrong. Pendergraft v. Commercial Standard Fire & Marine Co., 342 F.2d 427 (10th Cir., 1965).

██ Appellant has raised one further argument here we must consider which is that appellees are estopped from denying coverage under this bond. The facts upon which the estoppel argument is based are these: During 1960 the appel-

---

4. The Seventh Circuit however has held the indemnity bond applicable to a situation similar to this on the basis that the fictitious invoices were forged. Security National Bank of Durand v. Fidelity and Casualty Company of New York, 246 F.2d 582 (7th Cir., 1957). Although Wisconsin law was controlling, apparently none was available. The Seventh Circuit approved a definition of forgery as either a forged signature to a true instrument or a real signature to a false instrument. Subsequently, the Supreme Court of Wisconsin in First American State Bank v. Aetna Casualty and Surety Company, 25 Wis.2d 190, 130 N.W.2d 824 (1964), declined to follow the Seventh Circuit in Durand and held on similar facts that assignment of fictitious accounts receivable were neither forged nor counterfeit.

5. See generally, The Exchange National Bank of Olean v. Insurance Company of North America, 341 F.2d 673 (2d Cir., 1965); State Bank of Poplar Bluff v. Maryland Casualty Co., 289 F.2d 544 (8th Cir., 1961); First National Bank of Memphis v. Aetna Casualty & Surety Company, 309 F.2d 702 (6th Cir., 1962), cert. denied 372 U.S. 953, 83 S.Ct. 951, 9 L.Ed.2d 977 (1963); United States Fidelity & Guaranty Company v. First National Bank of Fort Morgan, 147 Colo. 446, 364 P.2d 202 (1961); Metropolitan Nat. Bank of Minneapolis v. National Surety Co., 48 F.2d 611 (D.C.Minn.1931). In two cases, North Carolina National Bank v. United States Casualty Co., 317 F.2d 304 (4th Cir., 1963), cert. denied 375 U.S. 905, 84 S.Ct. 193, 11 L.Ed.2d 144 (1963) and First National Bank of South Carolina of Columbia v. Glens Falls Insurance Company, 304 F.2d 866 (4th Cir., 1962) the Fourth Circuit denied recovery under the blanket bonds because of the words of limitation in the policies "as to any signature" following counterfeit or forged indicate that only a counterfeit signature would allow recovery.

lant bank loaned a considerable sum of money to one Walter E. Allen who assigned as security therefor accounts receivable evidenced by invoices of goods shipped to the U. S. Government. The invoices required the signature of an authorized government inspector for validation. The signatures of these government inspectors were obtained either by inserting fictitious invoices between several copies of genuine invoices as if such fictitious invoices were copies of the genuine invoices or by inserting blank forms between genuine invoices and typing in the blanks afterward. However, a few of the invoices bore no signature but merely the typed name of such inspector below the line for the inspector's signature. At this time, United States Fidelity and Guaranty Company only insured up to $50,000 with Lloyd's of London indemnifying any loss above that figure not to exceed one million dollars. Both insurers, however, did in that instance indemnify the bank when the notes of Allen became uncollectible. Upon expiration of the bonds under which the Allen claims arose, appellant decided to insure entirely up to one million dollars with United States Fidelity and Guaranty Company. At the time this bond was issued no understanding, other than the contract of insurance, was had between the insurer and the bank as to the coverage afforded by the bank and no representation was made that claims arising out of losses through loans made on fictitious invoices would or would not be paid.

The facts in the Allen matter are not identical to those in the present case. In the Allen matter, the invoices upon which the bank relied were the subject of fraud when the government inspectors' signatures were obtained without their knowledge. Those facts are clearly within the Oklahoma statutory definition of forgery in the second degree,[6] thus with-

in the policy coverage concerning forged documents. Therefore, we see no merit to appellant's argument on this point. The facts do not show that Fidelity changed its position with respect to the interpretation of the clause in question or misled appellant by its silence at the time of the execution of the renewal insurance contract.

Affirmed.

---

6. 21 Oklahoma Statutes Annotated § 1593 reads as follows:

"§ 1593. Falsely obtaining signature
  Every person who, by any false representation, artifice or deceit, procures from another his signature to any instrument, the false making of which would be forgery, and which the party signing would not have executed had he known the facts and effect of the instrument, is guilty of forgery in the second degree."