Richard **KRANE**, Bryan **Krane**, Rhonda **Krane** and Maria **Smith**, Plaintiffs,

v.

**AETNA LIFE INSURANCE COMPANY**, Defendant.

Civ. A. No. 87–C–1873.

United States District Court, D. Colorado.

Nov. 2, 1988.

Scott R. Larson, Denver, Colo., for plaintiffs.

Cecelia Fleischner, Long & Jaudon, Denver, Colo., for defendant.

## ORDER

CARRIGAN, District Judge.

Plaintiffs commenced this action by filing a complaint for declaratory action in the state district court for the City and County of Denver, Colorado. Defendant Aetna Life Insurance Company ("Aetna") then filed a petition for removal pursuant to 28 U.S.C. § 1441(b). Diversity jurisdiction is alleged to exist under 28 U.S.C. § 1332.

The following facts appear undisputed: Plaintiffs are the children of Mr. Richard Krane, who died on May 28, 1982, during parathyroid surgery at St. Anthony Hospital in Denver, Colorado. Plaintiffs commenced a medical malpractice suit against St. Anthony and two doctors involved with the surgery. Subsequently, the plaintiffs settled their lawsuit with the physicians under an agreement in which the physicians did not confess liability. Plaintiffs also asserted claims under a life insurance policy issued by the defendant to Mr. Krane's employer, the General Foods Corporation. Defendant paid the requested benefits under the life insurance policy.

This action arises out of an additional insurance policy issued by the defendant to General Foods Corporation. This policy covered accidental death and dismemberment. Plaintiffs seek a declaratory judgment that Aetna is obligated to pay benefits to them under this policy.

A brief review of the decedent's medical history would be helpful: Mr. Krane was admitted to St. Anthony for surgical exploration of the parathyroid gland. Mr. Krane's diagnosis was primary hyperparathyroidism. On May 22 and 24, 1982, Mr. Krane met with Dr. Wayne Moss to discuss his diagnosis and the risks and benefits of surgical treatment. On May 27, 1982, Krane voluntarily signed a consent form authorizing exploratory surgery of his neck to be performed by Dr. Moss at St. Anthony Hospital.

On May 28, 1982, Mr. Krane underwent exploratory surgery. Tragically, he died approximately two hours into the procedure. The official cause of death was cardiac arrest of unknown cause while under general anesthesia.

Article II, § 1 of the accidental death and dismemberment policy (policy no. ACC–45500) provides, in relevant part:

"If an employee suffers a bodily injury caused by an accident and as a result of such injury and, to the exclusion of all other causes, sustains within not more than 12 months after the date of the accident which caused such injury any of the losses listed in the Table of Benefits in this section, then, provided:

(a) the injury occurs while insurance is in force for the employee under this policy; and

(b) the loss resulting from the injury is not excluded from coverage in accordance with Section 3 of this Article;

the Insurance Company shall, subject to the terms of this policy, pay with respect to such loss a benefit determined from said Table of Benefits and based upon the Principal Sum for which the employee was insured on the date of said accident but in no case shall more than the Principal Sum be paid for all losses sustained by an employee through any one accident."

Article II, § 2 of the accidental death and dismemberment policy states, in pertinent part:

"Exclusions.

No insurance is provided and no benefits shall be payable under Section 1 of this Article with respect to any loss if the loss under Section 1 or any injury from which such loss results, is caused or contributed to by, or is a consequence of, or is in any way attributable to, any of the following excluded risks, even though the proximate or precipitating cause of said loss is a bodily injury caused by an accident:

(a) bodily or mental infirmity; or

(b) disease of any kind, except a pyogenic infection attributable solely to and occurring as the proximate result of an injury not excluded by this Article; or

(c) *Medical or surgical treatment*, except a loss covered by this Article which results directly from a surgical operation

made necessary solely by an injury not excluded by this Article; . . . ." (Emphasis added.)

Article II, § 3 does not set forth exclusions to the policy. Rather, it discusses the designation of policy beneficiaries and their rights.

Currently pending are the parties' cross-motions for summary judgment. The parties assert that there are no genuine issues of material fact which would preclude the granting of summary judgment. The legal issues have been briefed and oral argument would not materially assist my decision.

Under Fed.R.Civ.P. 56(c), summary judgment is proper "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and the moving party is entitled to judgment as a matter of law." *Celotex Corp v. Catrett,* 477 U.S. 317, 106 S.Ct. 2548, 91 L.Ed.2d 265 (1986). In *Catrett* the Court held that Rule 56 mandates the entry of summary judgment, after adequate time for discovery and upon motion, against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial. *Id.* at 322, 106 S.Ct. at 2552.

The issue presented by the parties' cross-motions for summary judgment is whether the accidental death and dismemberment insurance policy issued by the defendant can be construed to cover the death of the plaintiff's father.

"Ordinarily the construction of a contract is a question of law for the court." *People v. Johnson,* 618 P.2d 262, 266 (Colo.1980); *see also GTM Investments v. Depot, Inc.,* 694 P.2d 379, 381–82 (Colo.App.1984). "Where the meaning of the agreement is clear on its face there is nothing to interpret it and it must be enforced as written." *Johnson,* at 266; *Bennett v. Price,* 692 P.2d 1138, 1139 (Colo.App.1984). Whether or not a contract is ambiguous is a question of law for the court. *Id.* Additionally, it is a well-established principle that an insuror cannot be held liable beyond the scope of

risks which have been clearly covered in its contract. *United States Fidelity and Guaranty Co. v. First Nat. Bank of Fort Morgan,* 147 Colo. 446, 364 P.2d 202, 204 (1961); *see also Bowman v. Reyburn,* 115 Colo. 82, 170 P.2d 271 (1946) (contract must be enforced according to its terms, and a court is without authority to compel a party to do something it did not contract to do).

Defendant contends that summary judgment should be granted in its favor because Article II, § 2 of the insurance policy clearly excludes from coverage injuries that occur during medical or surgical treatment. Defendant states that:

"It is undisputed that the language of the Aetna policy excludes recovery for precisely the type of surgical accident which unfortunately happened to Mr. Krane. The courts have held that the language of the exclusion is clear and that the exclusion precludes recovery for accidents occuring during or as a result of medical or surgical treatment." (Memorandum brief, at 8).

■ Plaintiffs, however, assert that the exclusions to the policy are ambiguous because Article 2, § 1 refers to exclusions in § 3, not § 2. As observed by the plaintiffs, § 3 does not discuss policy exclusions. Plaintiffs rely on the rule that any ambiguities in the exclusionary clause of an insurance contract should be construed in favor of the insured. *See Worsham Const. Co. v. Reliance Ins. Co.,* 687 P.2d 988 (Colo. App.1984).

Defendant responds by contending that the language of Article II, § 2 unambiguously excludes coverage in this case, and that § 2 cannot be ignored. I agree with the defendant that the language of § 2 should be considered in determining whether the plaintiffs are entitled to recover benefits under the defendant's policy. *See Security Ins. Co. v. Houser,* 191 Colo. 189, 552 P.2d 308, 310 (1976) (provisions of insurance policy must be read as a whole).

■ Plaintiffs next argue that even if their policy is subject to the exclusions provided in Article II, § 2, the exclusion for

"medical or surgical treatment" does not encompass medical malpractice.

After reviewing the entire policy, I conclude that neither it nor any cases cited by the plaintiffs support their contention that the exclusion for medical or surgical treatment does not apply if physicians negligently cause the insured's death. Indeed, courts that have considered similar exclusionary clauses have held that such provisions exclude from coverage death caused by mishaps that occur during medical treatment. *See, e.g., Whetshell v. Mutual Life Ins. Co. of New York,* 669 F.2d 955 (4th Cir.1982) (coverage denied where death caused by use of an infected needle at hospital) and citations therein.

Article II, § 2 expressly and unambiguously states that no benefits shall be payable for any loss "caused or contributed to by," or "a consequence of," or "in any way attributable to" medical or surgical treatment, unless the treatment was itself necessitated by a covered accident. Here, it is undisputed that: (1) Mr. Krane's death was attributable to surgical treatment; and (2) the surgical treatment was not itself necessitated by an accident. I therefore conclude that the plaintiffs are not entitled to recover benefits pursuant to the defendant's accidental death insurance policy.

Accordingly, IT IS ORDERED that:

(1) Plaintiff's motion for summary judgment is denied;

(2) Defendant's motion for summary judgment is granted; and

(3) The complaint and this action are dismissed with prejudice.